(August 3, 1908.)

D. W. CHURCH, EARL WHITE, and C. C. CHILSON, Partners Doing Business Under the Firm Name and Style of CHURCH & WHITE COMPANY, Appellants, v. H. E. VAN HOUSEN, Respondent.

[97 Pac. 36.]

REAL ESTATE BROKERS—VERDICT OF JURY—CONFLICT OF EVIDENCE.

1. Where there is a substantial conflict in the evidence, the verdict of the jury will not be disturbed.

2. *Held*, in this case, that there is a substantial conflict in the evidence, and that the verdict of the jury will not be disturbed.

(Syllabus by the court.)

APPEAL from the District Court of the Fifth Judicial District for Bannock County. Hon. Alfred Budge, Judge.

An action to recover a commission for services as real estate brokers. Judgment for defendant. Plaintiffs appeal. *Affirmed.*

Clark & Budge, for Appellants.

If a broker is encouraged by a property owner to aid in a sale and led to believe that he will receive compensation, the owner cannot accept the benefit of his services and

deny him compensation. (*Steidl v. McClymonds,* 90 Minn. 205, 95 N. W. 906.)

Gray & Boyd, for Respondent.

This court has repeatedly held that the appellate court will not disturb a judgment or verdict or order denying a new trial where there is a substantial conflict in the testimony, and no rule of law appears to have been violated. (*Mootry v. Hawley,* 1 Ida. 543; *Pine v. Callahan,* 8 Ida. 684, 71 Pac. 473; *Spaulding v. Coeur d'Alene R. Co.,* 5 Ida. 528, 51 Pac. 408; *Commercial Bank v. Lieuallen,* 5 Ida. 47, 46 Pac. 1020; *State v. Rathbone,* 8 Ida. 161, 67 Pac. 186.)

STEWART, J.—The sole question presented on this appeal is: Does the evidence warrant the verdict? This action is to recover commission for services as real estate brokers. Trial was had to a jury and a verdict was rendered for the defendant.

It appears from the evidence that the plaintiffs were engaged in the real estate business in Pocatello, Idaho; that the defendant owned certain real estate in Pocatello and lived in Salt Lake, Utah; that on November 15, 1906, the plaintiffs wrote to the defendant the following letter:

"Dear Sir: Is your vacant corner at Arthur avenue and Clark street adjoining the blacksmith-shop for sale; if so, what price are you asking and would you want all cash? We have a party looking for some vacant property close in, and we might be able to dispose of it if you are ready. Kindly answer at your earliest convenience.

"Yours truly,

"CHURCH & WHITE CO.

"C.  Com.  5 per cent."

The defendant replied to this letter as follows:

"Nov. 18, 1906.

"Gentlemen: Acknowledging receipt, and answering yours of Nov. 15th, the corner in question is for sale. Please see Tom. Johnson concerning same.

"Yours truly,

"(Signed)  H. E. VAN HOUSEN."

Upon receipt of this answer, the plaintiffs called on Tom Johnson and informed him that they had heard from Mr. Van Housen and asked Johnson what the price would be, and he informed them that Van Housen wanted $3,000 net. The conversation with Johnson is further detailed by plaintiffs as follows:

"We told him that we would make a five per cent commission and make the price $3,150. We told him we had a purchaser for the property. I said, 'I suppose you know, Mr. Johnson, that we expect five per cent commission out of this?' He says, 'No, I didn't.' He says, 'You will have to get your commission over that.' He says, 'Mr. Van Housen wants $3,000 net.' Mr. Chilson then spoke up, 'Well, five per cent of $3,000 would be $150,' he said. 'We will ask $3,150,' and Mr. Johnson said, 'All right.'"

It further appears from the evidence that the purchaser with whom the plaintiffs were negotiating was the Eagles' Lodge of Pocatello, and that the plaintiffs gave the lodge the purchase price as $3,150.

The defendant testified that he had not listed this property with the plaintiffs; that he had a letter from them about the matter and replied thereto; that he had a telephone later from some one with reference to the purchase of this property; that he was not advised of the name of such person, and advised such person that the property was for sale and to see Tom Johnson. He says:

"I told Tom Johnson that I would take $3,000 net for the property. The Eagles' Lodge purchased the property and paid the money through Tom Johnson. I haven't paid Tom Johnson any commission. I expect to pay him a commission."

Mr. Johnson testifies that he was acting as agent for Mr. Van Housen for the sale of said property, and had authority from him to sell it; that he never listed the property with the plaintiffs and never asked them to find a purchaser; never made any agreement with them; that he sold the property for Mr. Van Housen and turned the money over to him; that he does not expect any commission. This witness details the conversation had with the plaintiffs as follows:

"I think that Mr. Chilson made the remark, 'We will have to add $150 to that.' They asked me first about the commission. I said, 'Why, I have got nothing to do with the commission. I am selling this property.' And Mr. Chilson said, 'We will have to add $150 to that for our commission.' I said, 'I don't care what you do or how much you add, so that I get $3,000 for Mr. Van Housen.' Mr. Chilson said that they would have to add $150. A few days after this I was called over the 'phone and had a conversation, in which I was asked if I was agent for the property. I said, 'I am,' and that it was for sale. He asked me the price. I told him $3,000 net cash, and that was the best I could do. He said, 'All right.' I said, 'Who are you, anyway?' and he said, 'Ellrod,' and I said, 'B. J., that is the price I have got to get for that property.'"

The Eagles' Lodge purchased the property at the price given by Mr. Johnson, to wit, $3,000. The defendant made a deed therefor. The purchase price was paid to Tom Johnson and by him turned over to the defendant.

This witness further testifies that in his conversation with the plaintiffs he was not requested by them to hold the property until they sold it, and that the property was to be sold to the first person coming along who would pay $3,000, just the same as it was given to all other inquiries.

Other evidence was introduced by both plaintiffs and defendant with reference to the propositions before the Eagles' Lodge. Some testified that the proposition before the lodge was $3,150, while others testified that the proposition considered by the lodge was $3,000. It is apparent from the evidence that Tom Johnson had the authority from plaintiffs to sell this property; that he gave the price as $3,000 to all persons inquiring; that the defendant never authorized the plaintiffs to sell this property or in any way appointed them as agents to find a purchaser; that their acts with reference to this matter were, so far as the defendant was concerned, purely voluntary.

The only conclusion that can be drawn from the evidence is that the defendant never personally authorized the plain-

tiffs to act as agents for the sale, or for the purpose of procuring a purchaser of this property. The defendant did no more than quote the price to the plaintiffs and directed them to see Tom Johnson. The inquiry then arises: Were the plaintiffs employed or authorized by Tom Johnson to sell said property or procure a purchaser therefor? The evidence shows that when they called upon Mr. Johnson he advised them that he had the property for sale; that the price was $3,000 cash net; that he had nothing to do with the commission. This, in substance, covers the essential and pertinent testimony with reference to the employment of the plaintiffs as agents.

It will be seen that Tom Johnson told them merely that the property was for sale, and gave them the price the same as he gave to all other inquiries. The property was not listed by Johnson with the plaintiffs; they were not authorized by Johnson to sell the same or procure a purchaser therefor. With this condition of the evidence, it clearly shows a conflict and it was a question for the jury. They resolved the question in favor of the defendant, and it appearing that there was a substantial conflict in the evidence, the verdict of the jury will not be disturbed. (*Vollmer Clearwater Co. v. Rogers,* 13 Ida. 564, 92 Pac. 579; *Pine v. Callahan,* 8 Ida. 684, 71 Pac. 473.)

The judgment of the lower court is *affirmed.* Costs awarded to the respondent.

Ailshie, C. J., and Sullivan, J., concur.