(No. 6131. July 20, 1934.)

WASHBURN–WILSON SEED COMPANY, a Corporation, Appellant, v. MARIE AGATHA ALEXIE and MARTIN BERTRAND, Her Husband, and WORLEY GRAIN COMPANY, Respondents.

[35 Pac. (2d) 990.]

A. L. Morgan, for Appellant.

James F. Ailshie and Robert Ailshie, for Respondents.

GIVENS, J.—Conrad Toetly took a lease on the premises upon which the peas involved in this action were grown, from Marie Agatha Alexie, and Martin Bertrand, her husband, from November 1, 1930, to November 1, 1933, for a cash rental, modified October 24, 1931, to provide: "for a crop share rental . . . . wherein the lessee agrees to give the lessor one-third of all crops raised."

December 28, 1932, Conrad Toetly agreed to grow approximately forty-five acres of seed peas for appellant at an agreed price and:

"Such crop or crops grown and the seed furnished by you (Washburn-Wilson Seed Company) is, and shall at all times remain your property and I agree that the entire crop must

be harvested, threshed and delivered by me and that no part of such crop or crops shall be pastured, fed or cut for hay.''

During the summer of 1933, before delivery of the crop to appellant, respondents Marie Agatha Alexie and Martin Bertrand, seized one-third or 7,445 pounds of the peas as their share of the crop and stored them with the respondent Worley Grain Company, whereupon, appellant brought this action in claim and delivery to recover the peas. The trial court sustained a demurrer to appellant's amended complaint on the ground that it did not state facts sufficient to constitute a cause of action.

Appellant relies upon *D. M. Ferry & Co. v. Smith,* 36 Ida. 67, 209 Pac. 1066, which on the face of it unquestionably and squarely supports its position. The action there being between a landlord basing his claim on a crop share lease, as respondent does here, and the seed company on a contract declared by the court to be one of bailment with the lessee.

Respondent relies upon *Devereaux Mtg. Co. v. Walker,* 46 Ida. 431, 268 Pac. 37, and *Federal Land Bank v. McCloud,* 52 Ida. 694, 20 Pac. (2d) 201, holding that under a crop share lease, identical in principle with the one herein, the landlord and lessee are cotenants in the crop, though neither case considered the right of a seed company under a contract of bailment as herein. At the time *D. M. Ferry & Co. v. Smith, supra,* was decided it had been declared in *Eaves v. Sheppard,* 17 Ida. 268, 105 Pac. 407, 134 Am. St. 256, that prior to division and delivery of the crop by the tenant to the landlord under a crop share rental, the landlord had no title in the crop. This case was cited to the court in *D. M. Ferry & Co. v. Smith, supra,* and since the Eaves case had held the landlord had no interest in the crop before it had been divided or delivered, there was a justifiable basis for the court holding as it did in *D. M. Ferry & Co. v. Smith, supra,* that the bailment contract was controlling in favor of the seed company as against the landlord.

*Devereaux Mtg. Co. v. Walker, supra,* however, flatly overruled *Eaves v. Sheppard, supra,* on this point and has been

in this particular affirmed and followed in *Federal Land Bank v. McCloud, supra.*

In overruling *Eaves v. Sheppard, supra,* therefore, the court eliminated the basis which supported the holding in *D. M. Ferry & Co. v. Smith, supra,* and this case must be decided upon the proposition, that one tenant in common may not in any way dispose of the share or interest of any other cotenant without such other cotenant's consent, etc. (62 C. J. 533 et seq.)

Respondent herein being a co-owner of any crops to be grown upon his land, his cotenant the lessee could make no contract with appellant affecting his title to such one-third interest, therefore, because *D. M. Ferry & Co. v. Smith, supra,* has already in effect been overruled by *Devereaux Mtg. Co. v. Walker, supra,* we must recognize it has not since that time been effective as against the landlord in a situation as herein, though undisturbed as defining the rights between the seed company and the party contracting with it.

Judgment affirmed.

Costs awarded to respondents.

Wernette, J., and Johnson, D. J., concur.

Petition for rehearing denied.

BUDGE, C. J., Dissenting.—Marie Agatha Alexie and Martin Bertrand are Indians and are husband and wife. The former is the owner of the land upon which certain seed peas were grown during the season of 1933, a portion of which peas are the subject of this controversy. On May 23, 1930, Marie Agatha Alexie leased by written instrument the lands owned by her to one Conrad Toetly. The lease was for a term of three years, for farming and grazing purposes only and provided for a cash rental of $425 per year. On October 24, 1931, this lease was modified so as to provide for a crop share rental, beginning with the season of 1932, wherein the lessee agrees to give the lessor one-third

of all crops raised in lieu of cash. The modification applies exclusively to the matter of payment of rent and does not change any other terms of the lease. On the 28th of December, 1932, appellant entered into a contract with Toetly, respondent's lessee, wherein and whereby Toetly agreed to grow for appellant approximately forty-five acres of peas for seed. This contract is substantially, in form and substance, the same as that set out in the opinion in *D. M. Ferry & Co. v. Smith*, 36 Ida. 67, 209 Pac. 1066. In the contract entered into between Toetly and appellant it was specifically agreed as follows:

"Such crop or crops grown and the seed furnished by you (Washburn-Wilson Seed Company) is, and shall at all times remain, your property, and I agree that the entire crop must be harvested, threshed and delivered by me, and that no part of such crop or crops shall be pastured, fed or cut for hay."

It is also provided among other things in said contract that as payment for his services in growing said crop Toetly was to receive $1.75 per hundredweight for recleaned peas, after certain deductions were made for seed furnished and cost of recleaning. These peas were to be grown during the pea season of 1933. During the summer of 1933 and in due season Toetly threshed the crop of peas, but before he could or had made delivery of the crop to appellant the respondents seized one-third of the peas and placed them in the warehouse at Worley. On or about the 20th of August, 1933, appellant commenced this action in the district court in and for Kootenai county, and filed its affidavit and bond in claim and delivery, and proper process was placed in the hands of the sheriff who took possession of the peas. Later, by agreement of counsel, appellant filed its amended complaint claiming ownership of and right to possession of the peas, in which amended complaint the lease, together with the modification thereof, and the contract between appellant and Toetly, were set out in full. Thereafter and on the same day respondents filed their demurrer to said amended complaint, upon the ground that said com-

plaint did not state facts sufficient to constitute a cause of action. On January 18, 1934, the trial judge sustained the demurrer to the amended complaint. Appellant refused to plead further and judgment was entered dismissing the action, from which judgment this appeal is prosecuted. Appellant specifies two assignments of error, first: That the trial court erred in sustaining respondents' demurrer to the amended complaint, and, second: that the trial court erred in entering its judgment of dismissal.

The question presented is: Were respondents entitled to the possession of one-third of the crop of seed peas, coupled with the right to seize possession of the same, or was the appellant entitled to the possession of the peas in controversy? Appellant bases its right to recover possession of the peas upon the terms of its contract with Toetly, wherein and whereby the title of the seed peas and the peas grown therefrom were at all times to remain the property of the appellant. Respondents base their right to retain possession of the peas upon the terms of their lease, as modified, with Toetly.

In *D. M. Ferry & Co. v. Smith, supra,* the contract provided that:

"The stock seed and seed crop produced from it is, and shall remain your property. . . . . "

In the case at bar the contract provided that:

"Such crop or crops grown and the seed furnished by you is, and shall at all times remain your property, and I agree that the entire crop must be harvested, threshed and delivered by me, and that no part of such crop or crops shall be pastured, fed or cut for hay."

In *D. M. Ferry & Co. v. Smith, supra,* following the rule announced in *D. M. Ferry & Co. v. Forquer,* 61 Mont. 336, 202 Pac. 193, 29 A. L. R. 642, in construing a contract practically identical with the one here involved to be a contract of bailment it was held that respondent (the seed company) was the owner of the property at the time of the commencement of the action and was entitled to the possession of the beans. The supreme court of Washington in *Nielsen v. Woodruff,* 133 Wash. 174, 233 Pac. 1, follows

the rule announced in *D. M. Ferry & Co. v. Smith, supra,* the court in the course of the opinion making use of the following language:

"The contract provides that the title to the crop is in appellant, and that this is the true construction . . . . Contracts of this character have been frequently before the courts for adjudication, and it has been uniformly held that such a contract calls for labor, and that the crop produced belongs to the party furnishing the seed."

In 29 A. L. R., page 647, in the annotation discussing the character of contracts to raise seed it is said:

"There is generally a provision in the contract reserving to the seedsman title to the seed raised. In construing these contracts to determine their character, the courts specifically passing upon the point hold that they are contracts of bailment, and not of sale, and hence the title to the seed raised is in the bailor, and not in the grower. (*Gilbert v. Copeland* (1918), 22 Ga. App. 753, 97 S. E. 251; *D. M. Ferry & Co. v. Smith* (1922), 36 Ida. 67, 209 Pac. 1066; *D. M. Ferry & Co. v. Forquer* (reported herewith) [29 A. L. R.] 642 [61 Mont. 336, 202 Pac. 193]; *Stewart v. Sculthorp* (1895), 25 Ont. Rep. 544.)"

The majority opinion in overruling *D. M. Ferry & Co. v. Smith, supra,* cites the case of *Devereaux Mtg. Co. v. Walker,* 46 Ida. 431, 268 Pac. 37, and *Federal Land Bank v. McCloud,* 52 Ida. 694, 20 Pac. (2d) 201. In neither of these cases did the court have before it, nor did the court consider, a contract such as the one here involved or the relative rights of the parties under such a contract, nor was *D. M. Ferry & Co. v. Smith, supra,* overruled or modified therein, and to my mind neither are controlling nor have any application to the question to be determined here. In both of the above cases the action was between a landlord and tenant and the question of bailment or the rights of a seed company were not involved. For the same reasons the fact that *Eaves v. Sheppard,* 17 Ida. 268, holding "A landlord acquires no title in the grain raised by the tenant until the division and delivery thereof by the tenant to him," was overruled in

*Devereaux Mtg. Co. v. Walker, supra,* has no application or bearing upon the question here.

Respondents and Toetly were not tenants in common in the seed peas furnished nor in the crop grown therefrom, nor were they co-owners, for the reason that neither had title to either the seed peas furnished or to the crop grown therefrom. By no stretch of imagination could respondents be co-owners or tenants in common with Toetly, who neither had title to the seed peas furnished nor to the crop grown therefrom. One cannot be a co-owner with someone who owns nothing.

*D. M. Ferry & Co. v. Smith, supra,* on April 5, 1922, twelve years ago, announced a rule of law directly contrary to the rule now announced in the majority opinion. When the contract in question was entered into between appellant and Toetly the settled law as declared in *D. M. Ferry & Co. v. Smith, supra,* became a part of that contract, and the parties contracted with reference thereto. No doubt other contractual relations have been likewise entered into, reliance being placed upon the principle of law therein stated. The case has been followed in other jurisdictions and is not without support in appellate courts of other states. The parties to the lease and the parties to the contract under which the seed peas were furnished were presumed to know the law as theretofore announced and what their respective rights were, and their rights should be governed thereby. I am therefore unable to agree with the views expressed in the majority opinion and dissent therefrom.

Holden, J., concurs.